# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD RAY ANDERSON, | 1:09-cv-02226-LJO-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MATTHEW CATE, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction in Alameda County, for two counts of first degree murder. Petitioner is serving a term of twenty five years to life.

In the instant petition, Petitioner challenges the California Board of Parole Hearings' (Board) July 3, 2007 decision finding him unsuitable for release.

On June 23, 2008, Petitioner filed a petition for writ of habeas corpus in the Alameda County Superior Court challenging the Board's 2007 decision. On April 13, 2009, the superior court denied the petition in a reasoned opinion.

---

[1] This information is derived from the exhibits attached to Respondent's answer and is not subject to dispute. (Court Docs. 14-16.)

1

1    On May 4, 2009, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the First Appellate District.  The petition was summarily denied on June 4, 2009.

On June 24, 2009, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  On December 2, 2009, the petition was summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on December 23, 2009.  Respondent filed an answer to the petition on April 12, 2010, and Petitioner filed a traverse on April 27, 2010.

STATEMENT OF FACTS[2]

**First Case-Newman**

On June 24, 1979, between the hours of 11:30 p.m. and 12:30 a.m., Mr. Leonard Luna was house sitting at the home of his employer, Mr. Bernard Marks.  At approximately 11:30 p.m., Mr. Luna answered the front door after hearing the doorbell.

Two individuals, later identified as Marty Spears and Daniel Geisler, asked for assistance in obtaining some gas for their vehicle.  Mr. Luna assisted in getting the individuals gas from the storage shed.  Mr. Luna returned to the home and the doorbell rang a second time.

Marty Spears and Daniel Geisler had returned again and asked to use the telephone.  Mr. Luna let them into the home.  After completing the phone call and exciting the house, Spears pulled a gun on Mr. Luna.  Then, one of them whistled and motioned for a car to pull to the front of the house.

Darren Lee and Petitioner then entered the residence.  They instructed Luna to lay on the floor as the four individuals began to remove items from the house.  Luna was then instructed to move to another room where he was tied with a rope and struck over the head with the butt of a gun. Luna heard one of the individuals saying, "lets kill him, he's seen our faces."  A different voice instructed the others not to kill him.

---

[2] This information is taken from the 2007 Board hearing which quoted the 2006 Board Report prepared by correctional counselor Bennett.

**Second Case-Ranzo Homicides**

On June 25, 1979, at approximately 2:30 p.m., fellow employees of Phillip and Kathryn Ranzo went to their residence to determine why they had not reported to work.  Phillip Ranzo was discovered lying face down, hog-tied on the garage floor and he appeared to be dead.  Responding officers found Kathryn in a third-story bathroom, partially nude.  A knife with blood smears was found near the home office.

The bedroom had been ransacked with jewelry and clothing thrown around the room.  Investigators found blood on the sheets and various locations throughout the bedroom.  The coroner pronounced both Philip and Kathryn Ranzo dead at the scene.  The autopsy report later identified the cause of death for both victims as "slashing wounds to the neck."

DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

1  The instant petition is reviewed under the provisions of the Antiterrorism and Effective
2  Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63,
3  70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
4  adjudication of the claim "resulted in a decision that was contrary to, or involved an
5  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
6  of the United States" or "resulted in a decision that was based on an unreasonable determination
7  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
8  § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>Williams</u>, 529 U.S. at 413.
9  "[A] federal court may not issue the writ simply because the court concludes in its
10 independent judgment that the relevant state court decision applied clearly established federal
11 law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411.
12 A federal habeas court making the "unreasonable application" inquiry should ask whether the
13 state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at
14 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to
15 or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v.</u>
16 <u>Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
17 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
18 state court decision is objectively unreasonable. <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th
19 Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).
20 II.     Review of Petition
21      There is no independent right to parole under the United States Constitution; rather, the
22  right exists and is created by the substantive state law which defines the parole scheme.
23 <u>Hayward v. Marshall</u>, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing <u>Bd. of Pardons v.</u>
24 <u>Allen</u>, 482 U.S. 369, 371 (1987); <u>Pearson v. Muntz</u>, No. 08-55728, 2010 WL 2108964, * 2 (9th
25 Cir. May 24, 2010) (citing <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d
26 174 (2005)); <u>Cooke v. Solis</u>, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).
27 "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state
28 statutes may create liberty interests in parole release that are entitled to protection under the Due

4

Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors.  The prisoner has a lengthy history of severe mental

problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied

parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in

original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.     Timeliness of Petition

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The instant petition was filed on December 23, 2009, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, Section 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In most cases, the limitations period begins running on the date that the petitioner's direct review became final. In a situation such as this where the petitioner is challenging a parole board decision, the Ninth Circuit has held that direct review is concluded and the statute of limitations commences when the final administrative appeal is denied. See Redd v. McGrath, 343 F.3d

1077, 1079 (9th Cir.2003) (holding that § 2241(d)(1)(D) applies in the context of parole decisions and that the Board of Prison Term's denial of an inmate's administrative appeal is the "factual predicate" of the inmate's claim that triggers the commencement of the limitations period).

Respondent initially argues that the one-year limitation period began to run immediately following the administrative decision of July 3, 2007, citing Redd v. McGrath, 343 F.3d at 1081. However, contrary to Respondent's argument, the July 3, 2007 decision was merely a proposed decision, and it did not become final until October 31, 2007. Under the rationale of Redd, Petitioner could not have known the factual predicate of his claim unless and until the decision becomes final. See Redd v. McGrath, 343 F.3d at 1084 (statute of limitations begins to run when administrative decision becomes final) ; see also Banks v. Kramer, 2009 WL 256449 *1 (E.D. Cal. 2009); Tidwell v. Marshall, __ F.Supp.2d ___, 2009 WL 1537960 (C.D. Cal. 2009); Feliciano v. Curry, 2009 WL 691220 (N.D. Cal. 2009); Ramirez-Salgado v. Scribner, 2009 WL 211117 (S.D. Cal. 2009).[3]  Based on these facts, the statute of limitations began to run the following day on November 1, 2007, and was set to expire one year later on November 1, 2008.

At the time Petitioner filed the first state petition on June 23, 2008, 235 days of the limitations period had expired.  The limitations period was tolled from June 23, 2008 to December 2, 2009, the date the California Supreme Court denied his petition for writ of habeas corpus.  The limitations period began again on December 3, 2009, and the instant petition filed on December 23, 2009, is timely.  Therefore, Respondent's argument that the petition is untimely is without merit.

B.  <u>Last State Court Decision</u>

Here, the Alameda County Superior Court issued the last state court reasoned decision, and under the look-through doctrine this Court must determine whether it was a reasonable application of federal law and a reasonable determination of the facts in light of the evidence.

---

[3] Notwithstanding his argument to the contrary, Respondent recognizes that this Court, not to mention several other District Courts, have concluded likewise, but argues that petition is still untimely even under this analysis.

Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).

The superior court held, in pertinent part, the following:

> The record reveals that the Board gave individualized consideration to all relevant factors. The Board's decision goes into detail as to some of the favorable circumstances in support of parole. Despite some positive factors, the Board felt that these did not outweigh the factors tending to show unsuitability for release on parole. The Board based its denial on the commitment offense, his institutional behavior, lack of self-help, and the latest psychiatric report. It is evidence from a review of the parole hearing transcript that a main factor for the Board's finding Petitioner is currently a threat to the public if released was Petitioner's behavior while incarcerated. Petitioner had 16 CDC 115, most recently in 2004, some involving violent and use of a controlled substance. Petitioner admitted to having a drug problem, has been disciplined for use of controlled substances, but has not participated in sufficient self-help to assist him with this particular issue. The record supports the finding that Petitioner has not participated in much self-help programming in his entire period of incarceration, although the Board commended him for his recent involvement in such programs. Also, there is some evidence to support the finding by the Board that the psychological evaluation and report was not supportive of parole release. . . . It is readily apparent that given the fact that Petitioner has been in prison for twenty-seven years at the time of the parole hearing, and his lack of criminal record, the Board spent a significant amount of time conducting the hearing in order to evaluate Petitioner's danger potential. A review of the record reveals that some evidence supports all of the Board's findings.

(Exhibit 6, to Answer.)

C. 2007 Parole Hearing

Petitioner's minimum procedural due process rights were met at the 2007 hearing in that Petitioner had received advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, and a written decision explaining the reasons for parole denial. Hayward, 603 F.3d at 561.

At the 2007 hearing, the Board found Petitioner unsuitable for release based on the circumstances of the commitment offense, lack of sufficient participation in self-help programming, institutional misconduct, and unfavorable psychological report. These findings provide some evidence to support the Board's finding of unsuitability.

With regard to the commitment offense, the Board found that it was carried out in an especially cruel and callous manner. There were multiple victims attacked, injured, and killed in separate incidents. The victims were confronted in their homes by four individuals and robbed of their belongings. Mr. Luna was tied with a rope and struck over the head with the butt of a gun

1  Victims Phillip and Kathryn Ranzo throats were slashed and they were bound with rope similar
2  to the rope used on Mr. Luna.  The motive for the offenses was financial gain, which the Board
3  found trivial in relation to taking the lives of two individuals.
4       Petitioner argues that the Board (and subsequent state court) improperly relied on the
5  aggravated nature of the commitment offense in finding him unsuitable for release.  Petitioner
6  reasons that he did not actually kill the victims and was convicted under California's Felony
7  Murder Rule, which makes an accomplice liable for the death in the commission of certain
8  felony, namely burglary of an inhabited residence.  Even if Petitioner acted as the "lookout" or
9  "getaway source", he nonetheless participated in the commission of the offense and is legally
10 liable for the killings of Phillip and Kathryn Ranzo, and he cannot escape the brutal
11 circumstances of the commitment offenses.  Therefore, the Board (and state court) properly
12 found the circumstances of the commitment offense remain indicative of Petitioner's present
13 dangerousness, particularly when considered in light of his institutional behavior.
14      During his incarceration, Petitioner received sixteen 115 violations, the last on September
15 9, 2004 for mutual combat.  Petitioner received four of the 115 violations after the last parole
16 hearing, two involving violence and one involving substance abuse.  He also received sixteen
17 128(a) counseling chronos, the last on June 26, 2005, for failure to report.
18      The Psychologist found that Petitioner was still at risk for both violence and relapse on
19 drugs given his recent rules violations for violence and drug use.  Petitioner was assessed to be in
20 the moderate range of future violence if released.  It was certainly reasonable for the Board to
21 conclude that Petitioner poses a current danger because he still has problems controlling his
22 anger and abusing drugs, and has not demonstrated an ability to function within the law upon
23 release. See Cal. Code Regs., tit. 15 § 2402(c)(6) (institutional behavior is a factor tending to
24 demonstrate unsuitability for parole if "the prisoner has engaged in serious misconduct in prison
25 or jail."); Cal. Code Regs., tit. 15 § 2402(d)(9) (institutional behavior may demonstrate suitability
26 where it "indicate[s] an enhanced ability to function within the law upon release.").
27      The Board also noted that Petitioner's participation in self-help had been sporadic and
28 weak, and the Psychologist concluded that Petitioner had not completed the necessary

programming essential to transition into society and further time is needed to achieve such programming.  In addition, Petitioner's vocational training was outdated.  Petitioner contends this factor was improperly considered by the Board because it is not an enumerated in section 2402(c)(1)-(6) to support unsuitability.  Petitioner overlooks the fact that section 2402(b) specifically states that the Board may consider "any information which bears on the prisoner's suitability for release."  Cal. Code Regs., tit. 15 § 2402(b).  Therefore, although this factor alone may not have justified the finding of unsuitability, it was properly considered as one factor, among others, that did not support suitability.

After considering the factors in support of suitability, the Board concluded that Petitioner was unsuitable for release because he must demonstrate an ability to maintain the positive gains over an extended period of time.  In light of the evidence above, there is clearly some evidence to support the finding that Petitioner remains a current danger if released, and the state court's decision was not an unreasonable determination of the "some evidence" standard nor an unreasonable determination of the facts in light of the evidence before the Board.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed

within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    **Dated:    July 13, 2010**                     /s/ **Dennis L. Beck**
                                                          UNITED STATES MAGISTRATE JUDGE